May it please the court, this appeal relates to a claim objection and the conclusion by the trial court that the claim was barred by CCP 426.30, that's the controlling statute. The controlling case is a California Supreme Court case, EO White versus Huntington Beach. That case is very, very clear. It's on point. It has not been distinguished by either the bankruptcy court or my colleague. And it requires that in order for there to be an equitable indemnity claim for it to mature, it has to have been paid. Can I stop you for one sec? Just to make sure I understand the bankruptcy court thought they distinguished it. So what you're saying is, well, you don't think that really was the right and so that was a wrong legal conclusion in your mind. Thank you. Thank you, Your Honor. Can you just focus on that for us so we know why you think that was a mistake? Right. So it was a tort claim in the EO White case. It is a tax claim in this case. There has been absolutely no cases that I could find that talk about tax claims in this context. And moreover, the bankruptcy judge was convinced that because it was a tax claim, it was a known amount as of the time that the answer was due in the pre-petition state court action. And as we pointed out in our briefs, this tax claim or the tax claims resulted from an audit, the audited amount. So it was after the filing of the answer. It still hasn't been paid. And so for those reasons, we find that the rationale of the bankruptcy court was incorrect. Moreover, the bankruptcy court, you know, there were a couple of findings that the bank, it's all laid out in the judge's nice tentative ruling that was supplied. There were a couple of findings in there that were made by the bankruptcy court that were addressed in the declarations that were filed in support of the reply brief. And so and the bankruptcy court didn't address those at all and really didn't address E.L. White in her tentative ruling. And so for those reasons, your honor, I would say that the matter should be reversed and or remanded. Well, can I ask you a quick question? Putting aside whether this was knowable, which I think was, if I remember correctly, that's what the bankruptcy court seemed to focus on, even if it wasn't known to the penny, it was knowable. Is it your position that you couldn't, that the claim could not have been asserted until it was reduced to a particular number? I mean, people assert claims all the time saying, well, I'm not sure how much it's going to be, but it's something. Is there an argument that that's what should have been done here? E.L. White even says that, you know, while the claim could have been asserted through a declaratory relief claim, and that may have been a better approach for terms of expediency and 426.30 didn't come into play until it had been paid. And as we know, this tax claim hasn't been paid all the way up to this time. So under the rationale of E.L. White, 426.30 could not apply. Counsel, under your argument, then, if he doesn't pay it this year, he doesn't pay it next year, he doesn't pay it for five more years, the liability will simply increase due to his own determination as to how this amount, when and if it'll be paid. Isn't that true? Well, that's what the bankruptcy judge said. But we pointed out that there was absolutely no evidence that the debtor claim objector was delaying payment for any reason. And moreover, the respondent, the creditor, could have paid it. And we pointed out that there are several things here. First, there was no evidence that there was an intentional failure to pay the taxes. Counsel, the tax liability, according to the proof of claim, is around $68,000. But the total amount of the liability is over $140,000. So there's more interest and penalties than there is tax liability. And that's something that your client controlled, not Mr. Rafael Hernandez. So I don't, I'm struggling with your argument in that regard. Well, Your Honor, as we pointed out in our briefs, any concern with regard to the interest and penalties could be as to whether the offset should include some or all of the interest and the penalties. Again, the creditor, there was nothing barring the creditor from paying his 50% of the tax liability at any particular time. Except that there's never been, has there, an established liability on behalf of Rafael? This is Roberto Hernandez's personal tax liability. The argument is being made that since it was incurred during the period, it must be both of theirs. But there's never been anything proved that's established that it, in fact, the IRS has determined that he paid a portion of the tax liability that was due to distributions that were made to Mr. Rafael Hernandez. Well, Your Honor, the state court judge concluded that they were 50-50 partners. That's number one. Number two. They were partners. Counsel, they were partners and partners get distributions. That is not a partnership debt. That is what the partner gets. And I believe that what Judge Gann is referring to. Yes, there was a partnership. We get that. But we're talking about the partner's liability, not a partnership debt. And that seems to be positive. Well, Your Honor, the partner's liabilities in this particular case, because they were 50-50 partners, I believe that they were 50% liable for the tax. That's a pretty fundamental statement of partnership law. Do you have cases that support that? Because the court disagreed. Your Honor, I don't have cases. What I would like to just emphasize to the court, if I might, is that in the reply declaration of Roberto Hernandez in paragraph six, this is page 178. He states, my income tax liability to the IRS and the STB is based upon the total earnings of the auto body and repair business of which Rafael Hernandez and I were determined to be 50-50 owners. I did not have any income tax liability during the tax years ending 2012 through 2015 due to income generated from any other source other than the auto body and repair business of which Rafael and Hernandez were determined to be 50-50 owners. So counsel, if he did not distribute 50% of the income to Mr. Rafael Hernandez, and in fact, that's the allegation that Mr. Rafael Hernandez was making when he brought the partnership dispute to court. And in fact, Mr. Hernandez would owe none of it. Isn't that true? I understand your point, Your Honor, but I don't believe that there were any determinations made in the state court whatsoever about the fact, you know, whether or not the monies had been paid. The issue really related to this property, the Lowell Street property and, you know, the apportionment of that property. And moreover, Rafael Hernandez never argued that he didn't receive 50% of the proceeds. I think if you go back and take a look at the record, you're not going to find any sort of argument as to that effect. And indeed, in the briefs, we even pointed that out and there was no pushback with regard to that. Well, counsel, the argument that the reason why they got together to to dissolve the business and to divide the assets was because the argument was you're keeping the proceeds and not giving them to me. And I don't want to work with you anymore. So let me out. That's in fact, exactly what the claim was. So I just I don't understand where your argument is. There was never any allegation made. That doesn't seem to be supported by the record. Your Honor, I understand. I believe I'd like to reserve or I'm beyond my... Okay. Do you want to reserve now? Okay. Okay. Let's hear from the appellee. Thank you, Your Honors. I'm not going to take much of the court's time. I think from the direction of the questions that were directed to Mr. Aver, I would tend to agree, frankly, with the tenor of those questions. Everything that Mr. Aver has asserted on behalf of the appellant was, frankly, under appellant's own control. Failed to file his taxes, failed to pay his taxes, no evidence that any of those taxes that are being assessed to him are anything but his own taxes, ever presented either during the negotiation for the sale of the business, during the trial, certainly had an opportunity to respond at any point in time by filing his tax returns, by determining the amount of his tax, by paying his tax. And I agree that this should not be a perpetual right to offset simply by his voluntary refusal or inability even to pay tax. That would So unless Your Honors have any questions of me, that's all I have. Counsel, I guess the only thing I'd ask is, you know, he relies upon the White decision and says that that's significant and it's distinguishable from this case. And maybe you can help us with your view of why White, it doesn't control the outcome of this decision. Sure. Thank you. I do agree. It is distinguishable. And not only because it involves, on the one hand, as White, a tort claim, on the other hand, a tax claim. The difference between those two is that you can't know, or you might not know, whether a tort claim would exist at the point in time where you had to file your response or your answer. Here, he easily could have known at any point in time prior to buying the business, what his tax liability was. And therefore, I think there's a clear distinction between White and this case. I think basically what we're looking at is a desperate attempt at three bites at the apple. So is it fair statement that the claim accrued when the liability occurred and the IRS and Mr. Roberto Hernandez would have known what the liability was? He's trying to suggest that accrual doesn't occur until some later date when I pay it. And that doesn't seem to be consistent with the idea that a claim exists, you know about it, and you have an obligation to do something with it at that time. Thank you, Your Honor. Yes, that is correct. It is, in fact, the burden of taxpayer under tax law, under penalty of felony prosecution, ultimately, if there is a willful failure to calculate and file for their taxes at the point in time that those tax returns are due. None of that was done here at any point along the time. Therefore, it was completely within the appellant's control to determine what the amount of liability was, much less whose liability it was. There's been no evidence at all that this is anything other than the personal liability of the appellant. Can I follow up with a couple? I'm sorry, Judge Gannon, was I interrupting you? No, no, I appreciate it. Thank you. Okay, can I follow up with a couple of quick things? I think the Bankruptcy Court looked at 426.30, and you're probably going to agree that it indicates a policy of California law, and probably many states, that we really should be determining like issues, you know, at the same time. And we don't want to have this hangover and find out years later there was something that, oh, I really, you know, should have mentioned this but, gee, I don't owe you the money, because it's something that existed at the same time as the claim. So it's an efficiency argument among other things, right? That's correct. Okay, so, and I think you would probably also tell me that on taxes, as you just started to point out, it's particularly important that it be contemporaneous, because a lot of the liability and the rights of the tax authority are going to spring from the initial obligation to pay, right? So, for example, there's going to be a lien, it's going to come not when you decide to pay it, but, you know, when you first don't pay it, correct? That's right, everything... For example, okay. But the thing that I guess, I guess my question is, given that taxes are, you know, they're sort of accounted for, but they might be adjusted in all kinds of ways that might well occur after the initial liability, do you think there's any place here for any, for lack of a better word, wiggle room on tax claims, since they are so eminently and in the real world so often adjusted by things outside of just what the revenue was in a particular year? Well, certainly there could be adjustments that take place upon audit at later points in time. Because the argument here is there was an audit. Yeah, and my argument would be that typically those audits are as a result of a failure of the taxpayer to appropriately account for what he should have done way back in the first. And so consequently, it all goes back to that first point in time. And I don't think there's any need to try to bend backwards to find a differing distinction for purposes of audits in tax situations. Again, the responsibility is the taxpayer to fully and completely file returns that reflect the income. And again, I again, I point out, there's no evidence anywhere in the record that this is anything other than the appellee's income. Right, and it's anything other than the appellee not reporting it. All right. That's the appellate not reporting it. Yes. I mean, if it were more complicated, then maybe that would be a different argument. That's right. Okay. Thank you. I understand. I have nothing further, Your Honor, unless there are other questions. Okay. Judge Spranker? No, thank you. Judge Gann? Good, thank you. Okay, thank you very much. Thank you, Your Honors. Okay. Okay, so let me go. I want to just the two, I think, key issues here. Number one, regarding the partnership. The two brothers were partners as determined by the state court. As two partners, they had a joint legal obligation to pay the taxes. And not having paid the taxes, they're still obligated to pay the outstanding taxes. All the blame is being put on Roberto Hernandez, but I would argue that Raphael Hernandez knew that there were tax liabilities coming out of this situation as well, and didn't do anything about it. Moreover, not only in the papers before the bankruptcy court, but also before the appellate court, you know, this was pointed out. And Raphael Hernandez has never stated that he didn't owe any portion of the taxes. That's number one. Number two, with regard to the policy that Judge Lafferty addressed, the language of the E.L. White decision goes into that and talks about that policy, but it clearly says a present ability to purchase rights upon having sustained an actual loss through payment. And that's what the California Supreme Court was focused in on, an actual loss through payment. In this case, there hasn't been any payment, so there hasn't been an actual loss, and therefore E.L. White is controlling, and in our view, just positive. And that's all I have. Okay, I have no further questions. Judge Gant? Good, thank you. Judge Fraker? No, thank you. Okay, thank you for your very good arguments. The matter will be on submission, and we'll be issuing a written decision as soon as we can. Thank you very much. Thank you, Your Honor. Thank you. Okay, should we?
judges: LAFFERTY, SPRAKER, GAN